UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER ASPREY KEANE and
CHRISTOPHER KEANE, wife and husband,

    Plaintiff/Counter-Defendants,

    v.

40 YEARS, INC. (d/b/a 40 Years of Zen), a
Delaware Corporation, and DAVID ASPREY,

    Defendants/Counter-Plaintiffs/Third-
    Party Plaintiffs,

    v.

ZOOMIUS, INC., a Nevada Corporation, and
TRACK INTELLIGENCE, INC., a Nevada
corporation,

    Third-Party Defendants.

CASE NO. C18-1768 RSM

ORDER DENYING DEFENDANTS'
EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter is before the Court on Defendants' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. Dkt. #15. Plaintiffs Jennifer Asprey Keane ("Mrs. Keane") and Christopher Keane ("Mr. Keane") initiated this action to determine ownership of certain software they allege was developed by Mr. Keane. Dkt. #1. Defendants answered and asserted counterclaims, alleging that Mr. Keane was an independent contractor working for

ORDER – 1

Defendants at the time he developed the software, that the software relies on Defendants' trade secrets and intellectual property, and that Plaintiffs have misappropriated the software and other proprietary material—amongst a litany of additional claims. Dkt. #9. Defendants now seek a temporary restraining order ("TRO") preventing Plaintiffs from using the software, preventing Plaintiffs from contacting any of Defendants' employees or clients, and requiring Plaintiffs to provide Defendants with electronic devices, data, documentation, and information. Dkt. #15. Plaintiffs oppose Defendants' Motion for a TRO. Dkt. #21. Having reviewed the briefing and the record, the Court declines to issue a TRO.

## II. BACKGROUND

The parties paint strikingly different stories of betrayal. As such, the Court will attempt to provide the basic factual background before visiting each party's version of events.

Defendant David Asprey ("Mr. Asprey") is the co-founder, sole owner, and President of Defendant 40 Years, Inc. ("40YOZ" and, collectively, "Defendants"). Dkt. #16 at ¶ 1. Defendants provide clients with exclusive meditation retreats, programmed to "boost creativity, intelligence, calmness, and focus." *Id.* at ¶ 10; Dkt. #1 at ¶ 9–11. In 2016, Mr. Asprey sought the assistance of his sister, Mrs. Keane, in operating 40YOZ. Dkt. #16-1 at 2–11. At the same time, 40YOZ needed technological support which Mr. Keane—Mr. Asprey's brother-in-law— agreed to provide. *Id.* at 13–22. Both Plaintiffs executed substantially similar Independent Contractor Agreements. *Id.* at 2–22.

At least part of Defendants' meditation retreat programming is premised on neurofeedback training, consisting of brain mapping, monitoring, and training. Dkt. #16 at ¶¶ 10–11. Defendants developed their own program for neurofeedback training ("Training Program"). *Id.* at ¶¶12–14. The Training Program takes place at the direction of neurotherapists

ORDER – 2

and uses hardware specifically selected by Defendants and specialized software. *Id.* at ¶¶ 15–16. Initially, Defendants relied on third-party software customized to their specifications. *Id.* at ¶ 18. However, Defendants wanted fully customized software and Mr. Keane developed custom software for use in the Training Program ("Custom Software"). *Id.* at ¶¶ 19–21.

The Custom Software presented Defendants with new revenue possibilities including the possibility of offering mobile training to graduates of the Training Program. Ultimately, the parties decided that spinning-off a joint venture from 40YOZ may be preferable to proceeding under the 40YOZ brand. *Id.* at ¶ 52. Plaintiffs and Mr. Asprey explored their options and negotiated as to ownership of the new venture. *Id.* at ¶¶ 55–59. But the negotiations eventually broke down, the relationships soured, and the parties find themselves in court.

## A. Defendants' Perspective

Defendants represent that, beginning in approximately summer of 2017, they directed Mr. Keane in the development of the Custom Software by providing specifications and the necessary neurofeedback knowledge. *Id.* at ¶¶ 18–20. Defendants began using the custom software in February, 2018, and the software improved the Training Program. *Id.* at ¶ 21. Defendants believed that the Custom Software provided an opportunity to develop a new program allowing clients to perform neurofeedback training at home. *Id.* at ¶ 22. At Defendants' direction, Mr. Keane began to modify the Custom Software to develop an at-home program ("Mobile Version"). *Id.* at ¶ 23. Defendants maintain that all of Mr. Keane's work was developed at the direction of Defendants, incorporated Defendants' proprietary information, constituted work product under the applicable Independent Contractor Agreement, and belongs to Defendants. *Id.* at ¶¶ 32–36.

///

///

ORDER – 3

Defendants determined that spinning-off the Mobile Version to a new company was preferable to using the 40YOZ brand and began negotiations with Plaintiffs as to ownership.[1] *Id.* at ¶¶ 52–55. However, those discussions broke down and Plaintiffs, while continuing to work as independent contractors, began to take control of the Custom Software and Mobile Version. *Id.* at ¶¶ 58–77. Plaintiffs directed one of Defendants' employees to delete at least part of the software from Defendants' systems, wrongfully obtained a laptop owned by Mr. Asprey and containing the software, and prevented Defendants from accessing all of the software that remained available to them. *Id.* at ¶¶ 58–77. The business relationships were terminated.

Defendants maintain that the Training Programs, Custom Software, Mobile Version, client lists, and test data gathered during neurofeedback training all constitute Defendants' proprietary material, which they take reasonable steps to protect. *Id.* at 24–29. Plaintiffs had unfettered access to this proprietary material in their independent contractor roles. Both before and since parting ways, Defendants maintain that Plaintiffs have used Defendants' proprietary material against them and have sought to steal business opportunities for themselves, to Defendants' detriment. *Id.* at ¶¶ 84–92.

**B. Plaintiffs' Perspective**

Plaintiffs represent Mr. Asprey as an ego driven business man intent on destroying those who do not yield to his will and disagree with the facts as presented by Defendants. Plaintiffs first question the extent of Defendants' trade secrets by minimizing the uniqueness of the hardware, software, and techniques used in Defendants' Training Program. Dkt. #21-1 at ¶ 5; Dkt. #21-2 at ¶ 9. Plaintiffs indicate that they came to work for Defendants at Defendants' request and executed Independent Contractor Agreements—which, Plaintiffs note, lacked non-

---

[1] Defendants do not indicate why they explored joint ownership of the new venture with Plaintiffs.

ORDER – 4

compete clauses—specifying the statement of work to be performed. Dkt. #21-1 at ¶¶ 6–9; Dkt. #21-2 at ¶¶ 5–8. Plaintiffs maintain that the statement of work also defined ownership, with all work product created in the course of the relationship and within the statement of work belonging to Defendants and any other work outside of the Independent Contractor Agreements belonging to Plaintiffs. Dkt. #21 at 4–5. While Plaintiffs concede that Defendants own work product produced under the agreements, they assert that Defendants fundamentally misunderstand the relevant software and that it was not created under the Independent Contractor Agreements.

Plaintiffs assert that Mr. Keane created "certain enterprise and data management software" that competes with standard software programs within the neurofeedback field (the "Keane Software"). Dkt. #21-2 at ¶ 10. Plaintiffs assert that the Keane Software was created by Mr. Kane in his own time with his own resources and without Defendants' oversight. *Id.* The Keane Software "translates" brain activity into audible sounds to aid in the provision of neurofeedback training. *Id.* at ¶ 11. While Plaintiffs note that the Keane Software could be utilized by meditation retreats similar to Defendants' they do not believe that the Keane Software directly competes with Defendants' business offerings. Dkt. #21 at 6.

According to Plaintiffs, Mr. Keane intended to market the Keane Software and thought that a business relationship with Mr. Asprey could be advantageous for them both. Dkt. #21 at 7; Dkt. #21-2 at ¶ 17. Plaintiffs allege that they pursued a business partnership with Mr. Asprey and that when the business partnership fell through, Mr. Asprey became hostile and now seeks to "end" them. Dkt. #21 at 7. Accordingly, Plaintiffs allege that many of Defendants' factual allegations are false or misleading and paint their actions in a negative light. Dkt. #21-1 at ¶¶ 15–20; Dkt. #21-2 at ¶¶ 18–22. Specifically, Plaintiffs argue that the laptop removed from Mr. Asprey's possession belonged to Mr. Keane and, more importantly, assert that "when Mr. Asprey

severed all ties with [Plaintiffs, Plaintiffs] did not possess or retain any of Defendants' trade secrets. Dkt. #21-1 at ¶ 16; Dkt. #21-2 at ¶ 19.

## III. DISCUSSION

### A. Legal Standard

A federal court may issue a TRO "with or without written or oral notice to the adverse party" only if "specific facts in the affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the moving party "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

The standards for issuing a TRO are "substantially identical" to those required for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The party seeking the TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Resources Defense Council*, 555 U.S. 7, 20 (2008)).

### B. Procedural Requirements

Defendants seek a TRO in a case initiated by Plaintiffs and, consequently, notice and service occurred through the Court's Electronic Case Management system. However, Defendants make no showing that they have served their motion on the Third-Party Defendants (Track Intelligence, Inc. and Zoomius, Inc.). "Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be

granted." LCR 65(b). Because Defendants have not satisfied the requirements of Federal Rule of Civil Procedure 65 or Local Civil Rule 65, the motion is denied as to the Third-Party Defendants.

**C. Defendants Do Not Established That They Are Entitled to an Injunction**

**1. Likelihood of Success on the Merits**

The likelihood that the moving party will succeed on the merits is the threshold inquiry. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citations omitted). Defendants justify their request for a TRO on the basis of they are likely to prevail on three of their counterclaims: (1) violations of the federal and state trade secret statutes, (2) violation of the federal Computer Fraud and Abuse Act, and (3) breach of contract. The Court addresses each in order.[2]

**a. Misappropriation of Trade Secrets**

A misappropriation of a trade secrets occurs—in the manner most relevant to this case—if Plaintiffs acquired trade secrets while under contract with Defendants, had an obligation to maintain the secrecy of those trade secrets, and used or disclosed the trade secrets. *See* REV. CODE. WASH. § 19.108.010(2).[3] Defendants argue that Plaintiffs have had access to Defendants' proprietary material, were subject to confidentiality provisions of the Independent Contractor Agreements, and have used or disclosed the trade secrets by using them to start a competing

---

[2] Plaintiffs suggest that the Court should consider their pending Motion to Compel Arbitration (Dkt. #17) in determining Defendants' likelihood of success on the merits. Dkt. #21 at 9 (citing *Wallace v. Buckingham Prop. Mgmt.*, No. 216CV1000TLNCKDPS, 2016 WL 4248037 at *1 (E.D. Cal. Aug. 11, 2016)). But *Wallace*, the case cited by Plaintiffs, dealt with pending motions to dismiss directly challenging the merits of the action and necessarily weighing on the likelihood of success. Plaintiffs' Motion to Compel Arbitration does not weigh on the merits.

[3] The parties do not indicate that there are any material differences between the Defend Trade Secrets Act (18 U.S.C. § 1836) and the Washington Uniform Trade Secrets Act (Chapter 19.108, REV. CODE. WASH.). *See* Dkt. #15 at 14 (relying on the same evidence to satisfy both claims). Accordingly, the Court does not consider the claims separately.

ORDER – 7

business and by preventing Defendants' access to the software. Dkt. #15 at 13–17. Plaintiffs argue that Defendants have not even established the relevant trade secrets at issue and appear to argue that no misappropriation can occur because their venture will not be Defendants' direct competitor. Dkt. #21 at 10–11.[4]

Plaintiffs are correct that Defendants bear the burden of establishing trade secrets. *See Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash.2d 427, 439, 971 P.2d 936, 942 (1999) (citing *Boeing Co. v. Sierracin Corp.*, 108 Wash.2d 38, 49, 738 P.2d 665 (1987)). Defendants' motion establishes that software and client lists can be trade secrets and, at least in broad strokes, establishes that the software and client lists at issue here should be treated as such.[5] However, there remains ambiguity as to the trade secrets at issue and, more significantly, competing evidence as to ownership of the software.[6] Plaintiffs concede that the work product generated under the statement of work in the Independent Contractor Agreements belongs to Defendants. Dkt. #21 at 5. But there remains an underlying dispute as to what specific software is at issue in this case and whether that software was created under the Independent Contractor Agreement's statement of work. This fundamental dispute clouds Defendants' likelihood of success on this claim as Plaintiffs actions, even if as described by Defendants, constitute misappropriation only

---

[4] Plaintiffs' second argument appears to miss the point and relies on a case implicating a non-compete clause. Dkt. #21 at 11 (citing *Elec. Evidence Discovery, Inc. v. Chepalis*, No. C07-1929RSL, 2007 WL 4376194 (W.D. Wash. Dec. 13, 2007)). Whether Defendants and Plaintiffs are competitors does not appear to resolve the matter at hand and appears more relevant to the consideration of irreparable harm.

[5] *Sun Distrib. Co., LLC v. Corbett*, No. 18-CV-2231-BAS-BGS, 2018 WL 4951966, at *4 (S.D. Cal. Oct. 12, 2018) (noting customer lists often constitute trade secrets).

[6] Plaintiffs' alleged use of client contacts appears more relevant. However, even if Defendants can establish a likelihood of success on the merits with regards to client information, they cannot establish irreparable harm, as discussed below.

ORDER – 8

if the trade secrets belong to Defendants. 18 U.S.C. § 1839(5) (defining "misappropriation" in regards to a "trade secret of another").

The record before the Court is not robust and does not establish more than speculation as to Defendants' likelihood for success on their misappropriation of trade secrets claims. Even if Defendants are more likely to prevail, the difference does not appear significant to the Court.

### b. Computer Fraud and Abuse

Defendants assert that they are likely to succeed on their claim under the Computer Fraud and Abuse Act, but provide little more than unadorned argument to show a likelihood of success. Defendants point out that a violation of that statute occurs when a person accesses a protected computer without authorization, or exceeds authorization, with intent to defraud and obtains anything of value. Dkt. #15 at 17 (citing 18 U.S.C. § 1030(a)(4)). While Defendants allege that various actions violated the Computer Fraud and Abuse Act, they provide no legal authority—aside from the statute—to show why this is the case. On this record, the Court does not find that Defendants have established a high likelihood of success on this claim.

### c. Breach of Contract

Defendants correctly note that their breach of contract claim requires establishing: "(1) the existence of a valid and enforceable contract; (2) performance by Defendants; (3) breach of the contract by [Plaintiffs]; and (4) resulting injury to Defendants." Dkt. #15 at 18 (citing *Pete v. Tacoma Sch. Dist. No. 10*, 198 F. Supp. 3d 1206, 1216 (W.D. Wash. 2016). But again, Defendants are vague on specifics. Defendants point to numerous provisions in the Independent Contractor Agreements, but fail to specify specific actions violating the Agreements.

Plaintiffs further argue that Defendants cannot demonstrate that they have or are breaching the Agreements and therefore cannot obtain a TRO. Dkt. #21 at 10 (citing *Promotion*

ORDER – 9

*Holdings Glob. Inc. v. Parker*, No. C16-1548, 2016 WL 6902551 (W.D. Wash. Nov. 22, 2016)). Plaintiffs argue that while they have conceded that several of the materials identified by Defendants do in fact belong to Defendants, they have clearly established that they are the sole owners of the Keane Software. Dkt. #21 at 5–6. Due once again to the many unresolved issues of fact, Defendants have not established a strong likelihood of success on the merits.[7]

2. **Irreparable Harm**

   Irreparable harm is not presumed. As the Ninth Circuit has explained:

   At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm. . . . Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. . . . A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief. . . .

*Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (alteration in original) (citations omitted). Financial loss generally is not irreparable harm as it can be remedied by money damages and more intangible harms, like loss of goodwill or prospective customers, must be shown to be real and imminent. *Blindlight, LLC v. Cubbinson*, No. LACV1703497JAKPLAX, 2017 WL 6888498, at *5 (C.D. Cal. May 16, 2017).

Defendants point primarily to their inability to utilize the latest version of the software. Dkt. #15 at 19–20. But Defendants do not provide the Court a clear enough picture of the circumstances to establish imminent irreparable harm. Defendants do not allege that they lack a version of the latest software. *See* Dkt. #16-1 at ¶¶ 71–76 (indicating that Defendants have been using the new software for approximately nine months and indicating that the version Defendants believe to be in their possession is around six months old). Additionally, Defendants indicate

---

[7] Plaintiffs also argue that Defendants are unlikely to succeed on the numerous other claims asserted in their answer and counterclaim. Dkt. #21 at 12. However, because Defendants have not sought a TRO on the basis of these claims, the Court need not consider the arguments.

ORDER – 10

broadly that returning customers may notice a "difference in the program"—presumably a negative difference resulting in a loss of goodwill. *Id.* at ¶ 83. But Defendants do not offer support beyond this conclusory statement.

These examples are demonstrative of the speculative and broadly defined harms that Defendants assert they will suffer.[8] As Plaintiff points out, many of Defendants' specific allegations lack details demonstrating that the harms are imminent and irreparable. Dkt. #21 at 13–17.[9] While Defendants point to other cases where more intangible harms were found imminent and irreparable, they do not explain why such a finding is appropriate in *this* case.[10]

Overall, Defendants fail to carry their burden of demonstrating imminent and irreparable harm. Nor do Defendants establish why those harms cannot be adequately compensated by monetary damages in the context of this case. *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 73 F.3d 1239, 1250 (9th Cir. 2013) (noting need to establish (1) that irreparable harm is likely in the absence of an injunction and (2) that other legal remedies are inadequate). Defendants' failure to establish irreparable harm weighs strongly against a TRO.

///

---

[8] Plaintiffs also attack the evidence relied upon by Defendants. Dkt. #21 at 20–22. Specifically, Plaintiffs assert that Mr. Asprey's declaration relies extensively on hearsay. *Id.* However, because parties are unlikely to have all the evidence at this early stage and because the Court is acting as the fact finder, the Court finds it more appropriate to consider Plaintiffs' arguments in determining the weight to afford Mr. Asprey's declaration.

[9] For example, Defendants indicate that Mr. Asprey recently "learned that one of [40YOZ's] client referral services was suspending its work with 40YOZ" and that Defendants "expected to generate approximately $600,000 in sales from that relationship." Dkt. #16-1 at ¶ 84. As Plaintiffs note, Defendants provide nothing to indicate that the suspension was in any way connected to the actions of Plaintiffs. Dkt. #21 at 22 n. 21.

[10] Defendants also attempt to rely on a presumption of harm caused by misappropriation of trade secrets. Dkt. #15 at 20. But due to underlying issues with their misappropriation claims, as noted above, any presumption premised on misappropriation must also fail.

ORDER – 11

### 3. Balance of Equities and the Public Interest

Given that the Court has determined that Defendants have not adequately established a likelihood of success on the merits or irreparable harm—the minimum required of a party seeking a preliminary injunction—the Court need not reach the remaining considerations. *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003) ("movant must establish at the very least both of the first two factors"); *cf. State of Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017).[11]

## IV. CONCLUSION

Accordingly, having reviewed Defendants' Motion, Plaintiffs' response, and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. #15) is DENIED.

Dated this 2nd day of January 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] Similarly, the Court needs not consider the Ninth Circuit's alternative test for injunctive relief—that a movant has shown serious questions are raised and the balance of hardships tips sharply in its favor—as the Court would reach the same conclusion.